608 A.2d 1260

**Carl Edward BOND**

v.

**STATE of Maryland.**

**No. 1446, Sept. Term, 1991.**

Court of Special Appeals of Maryland.

July 6, 1992.

José Felipé Anderson, Asst. Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for appellant.

Kreg Paul Greer, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Joseph I. Cassily, State's Atty. for Harford County, Bel Air, on the brief), for appellee.

Submitted before WENNER, FISCHER and DAVIS, JJ.

WENNER, Judge.

Appellant, Carl Edward Bond, was convicted in the Circuit Court for Harford County of assault with intent to rob and attempted robbery with a deadly weapon. After the court sentenced appellant to twenty years of imprisonment with all but twelve years suspended, he noted this appeal. Upon appeal, appellant presents us with but one question:

> Did the trial court err when it failed to admit the handwritten declaration against the interest of Wylie Anderson Davis, Jr., obtained by the police?

For reasons we will explain, we shall affirm the judgments of the circuit court.

## FACTS

On October 11, 1990, appellant, Charlie Byrd ("Byrd"), Wylie Anderson Davis, Jr. ("Davis"), Wylie Watkins ("Watkins") and Patty Ballentine ("Ballentine"), were riding in an automobile. At some point, the automobile stopped and

Ballentine got out saying that she was going to pick up "the baby" and she would not be long. Thereafter, Davis got out, saying that he had to go to the bathroom. Appellant, Watkins, and Byrd remained in the automobile. A short time later, Davis returned to the automobile. According to Watkins, Davis opened the door, brandished what Watkins thought was a gun, and said "this is a stick-up." Watkins then testified that Davis hit him and appellant hit Davis.[1] During the altercation, Watkins "cut" Davis with a knife.

Byrd, who was the driver of the automobile, corroborated Watkins's testimony. Byrd said that Davis and Ballentine asked for a ride, that he agreed to give them a ride, and that he and Watkins were in the front seat and appellant, Davis and Ballentine were in the back seat. Byrd also said that when Ballentine got out appellant and Davis remained in the automobile. A short time later, Davis left the automobile. When Davis returned, he opened the door and said "this is a stick-up."

At trial, the State introduced into evidence a statement signed by appellant. According to the statement, Davis, Ballentine, and appellant asked for a "hak" ride from Byrd. While they waited for Ballentine, a fight broke out between Watkins and Davis. Appellant sought to introduce a statement obtained from Davis by Officer Edward Keck. According to appellant, since Davis's statement inculpates Davis, and exculpates appellant, it is a statement against Davis's penal interest.

When appellant sought to introduce the statement, the court sustained an objection by the State. Appellant then asserted that Davis was an unavailable witness, stating:

As I had indicated to the Court in chambers, I had summons [sic] Mr. Davis to appear and testify. He is currently being housed at Hagerstown Department of Corrections and he did appear yesterday morning. At the commencement of trial, brought by the guards at the

---

**1.** Testimony places appellant in the rear seat of the automobile when Davis assaulted Watkins.

Department of Corrections. I spoke with Mr. Davis and he made it extremely and abundantly clear to me that he had absolutely no intention or desire to testify.

I'll candidly admit I should have put that on the record. I had assumed that I would not be presenting my evidence until Friday or Monday, given the state's projections as to how long it would take, I thought it unwise to have Mr. Davis to be [sic] housed out here, given my understanding of the situation and the circumstances. So, I indicated I would not call him [Davis] as a witness, based upon that.

However, I would like to proffer to the Court that I would have called Mr. Davis simply to indicate to the Court that he refused to testify. His case is currently on appeal. He has an absolute—absolute right not to testify and I can't compel him to testify. He made it clear to me that he was not going to testify.

I proffer that, only out of caution, I would also then try to readmit into evidence Defendant's exhibit, I believe number one, which is the statement of Mr. Davis as made to Deputy Keck on the morning immediately following the incident, and shortly after his arrest. I would proffer the testimony as a declaration against interest, as an exception to the hearsay rule and based upon the fact that I cannot compel the witness to testify, and therefore, I'm entitled as the state would be entitled to introduce that evidence in this case.

Appellant proffered to introduce Davis's statement as an exception to the hearsay rule. He asserted that Davis would invoke his privilege against self-incrimination if he were present. *Jacobs v. State* 45 Md.App. 634, 653, 415 A.2d 590, 601 (1980) (citing *Harris v. State,* 40 Md.App. 58, 63 n. 4, 387 A.2d 1152, 1155 n. 4 (1978)).

What we must ultimately decide is whether, in order to present Davis's statement, it was necessary for Davis to take the stand and invoke his privilege against self-incrimination, thus affording the trial judge the opportunity to rule upon the validity of Davis's assertion of his privilege

against self-incrimination. In other words, was the proffer sufficient to establish that Davis was unavailable? We hold that it was not.

## THE LAW

In Maryland, it is beyond cavil that a party seeking to introduce hearsay evidence must show that the evidence is admissible. Hearsay evidence is ordinarily not admissible, "[a]lthough subject to multitudinous exceptions, the [hearsay] Rule, in its essence, is a rule of exclusion.... The opponent of hearsay does not have to show why it should be rejected. The fact that it is hearsay is, presumptively, reason enough." *Cassidy v. State*, 74 Md.App. 1, 7–8, 536 A.2d 666, 669, *cert. denied*, 312 Md. 602, 541 A.2d 965 (1988). In the instant case, appellant proffered Davis's statement under an exception to the hearsay rule. Specifically, appellant asserts that Davis's statement is a declaration against penal interest and that Davis was unavailable to invoke his privilege against self-incrimination. Maryland has long recognized a declaration against penal interest as an exception to the hearsay rule. *State v. Standifur*, 310 Md. 3, 9–10, 526 A.2d 955, 958 (1987). Moreover, this exception to the hearsay rule is contained in the Federal Rules of Evidence [2] and has been adopted by an overwhelming majority of our sister states. *See Standifur.*

Admissibility of hearsay evidence as a declaration against penal interest is based upon the theory that "persons do not make statements which are damaging to themselves unless satisfied for good reason that they are true." Fed.R.Evid. 804(b)(3), note of advisory committee. A declaration against penal interest enjoys a presumption of reliability, as it is against a recognized interest of the declarant. *Brown v. State*, 317 Md. 417, 423–25, 564 A.2d 772, 775–76 (1989). A foundation for the admissibility of a statement

---

**2.** Fed.R.Evid. 804(b)(3).

against penal interest is establishing that the declarant is indeed "unavailable."[3]

## DISCUSSION AND ANALYSIS

In order to secure the admission of Davis's statement, appellant must have persuaded the trial court that Davis was truly unavailable. For example, in the case *sub judice*, appellant must show that Davis is unavailable, and that, if available, Davis would assert his privilege against self-incrimination. *Parks v. State*, 47 Md.App. 141, 147, 422 A.2d 384, 387 (1981) (citing *Jacobs* 45 Md.App. at 653, 415 A.2d 590). Unfortunately for appellant, he failed to persuade the trial court that Davis was unavailable. As appellate courts in Maryland have yet to address the foundation necessary to be established before admitting the statement of an unavailable witness into evidence, we must look elsewhere for guidance.[4]

In *United States v. Thomas*, 571 F.2d 285 (5th Cir.1978), the 5th Circuit was confronted with a similar situation. Multiple defendants were tried jointly. During the trial, one of them elected not to take the stand, but made no formal claim of privilege. Later, upon motion to introduce a declaration against his penal interest, the court ruled that:

> [the declarant] did not take the stand, obviously relying on the privilege against self-incrimination. His unavailability based on the Fifth Amendment privilege satisfies [Fed.R.Evid.] 804(a)(1).

*Thomas* at 288.

The Court went on to say that

---

**3.** Means of showing unavailability are collected in Fed.R.Evid. 804(a) (*e.g.*, Fed.R.Evid. 804(a)(2) declarant refuses to testify despite order of court; Fed.R.Evid. 804(a)(3) declarant claims lack of memory; Fed. R.Evid. 804(a)(4) death or physical or mental illness or infirmity of declarant; Fed.R.Evid. 804(a)(5) declarant beyond subpoena power of court).

**4.** We note the issue was raised but not decided by the Court of Appeals in *Adkins v. State*, 316 Md. 1, 7 n. 6, 557 A.2d 203, 205–6 n. 6 (1989).

Rule 804(a)(1) requires an express assertion of the privilege and a ruling by the court that the privilege constitutes unavailability [citation omitted], but here the existence of the privilege and [the declarant's] right to assert it and [the declarant's] unavailability as a witness are patent. The trial court declared the evidence inadmissible before reaching issues raised by Rule 804. It would be mere formalism to abjure the merits of [the declarant's] claim in these circumstances.

*Id.,* (citing *United States v. Oropeza,* 564 F.2d 316, 325 n. 8 (9th Cir.1977)).

In *United States v. Young Brothers, Inc.,* 728 F.2d 682, 691 (5th Cir.1984), the 5th Circuit, relying upon *Thomas,* again held that the "requirement [that the declarant take the stand, assert the privilege and the court recognize it] need not be met when its fulfillment would be a mere 'formalism.'"

In *United States v. Brainard,* 690 F.2d 1117 (4th Cir. 1982), *cert. denied,* 471 U.S. 1099, 105 S.Ct. 2320, 85 L.Ed.2d 839 (1985), the 4th Circuit considered a proffer by appellant's attorney that "I will advise him and he will accept my advice to claim the privilege of the Fifth Amendment." Under these circumstances, the court concluded that " '[i]t would be mere formalism to abjure the merits of [the declarant's] claim.' " *Brainard* at 1123 (citing *Thomas* at 288); *see also Lowery v. Maryland,* 401 F.Supp. 604, 606 (D.Md.1975), *aff'd,* 532 F.2d 750 (4th Cir.1976) (unpublished opinion), *cert. denied,* 429 U.S. 919, 97 S.Ct. 312, 50 L.Ed.2d 285 (1976) (when a declarant's attorney proffered that the declarant would assert his Fifth Amendment privilege if called, the declarant was considered by the court to be unavailable, despite the absence of a formal ruling); *cf. United States v. Klauber,* 611 F.2d 512, 514 (4th Cir.1979), *cert. denied,* 446 U.S. 908, 100 S.Ct. 1835, 64 L.Ed.2d 261 (1980) (declarant's attorney did not appear in court, but merely represented to the defendant's attorney that his client would refuse to testify.) The *Brainard* court went on to conclude that the proffer by declarant's attorney that

the declarant would claim privilege against self-incrimination, was sufficient to consider the declarant as an "unavailable witness." *Brainard* at 1123. Nevertheless the court said in footnote 12:

> Of course, the district judge should have required the witness to appear and assert the privilege, and should have ruled formally on the matter before evaluating his availability. We simply hold that in the present circumstances, where the *district judge* had in effect excused the defendant from obtaining a formal assertion of the privilege, the defendant is not foreclosed by the failure to comply with the strict requirements of the rule.

*Brainard* at 1124 n. 12 (citation omitted).

■ Although we believe the better approach is having the declarant take the stand and assert the privilege, affording the trial judge an opportunity to rule formally on the matter, we acknowledge the reasoning in *Thomas* and *Brainard* that when "it would be mere formalism to abjure the merits of [the declarant's] claim," in the exercise of its discretion, the court may find the declarant to be unavailable, without the requisite formality. In the case *sub judice*, the trial court declined to accept the proffer by appellant's attorney asserting that, if available, Davis would assert his privilege against self-incrimination. Unlike the situation in *Brainard*, appellant's attorney had no authority whatever to speak for Davis. Thus, his proffer does not suffice.

JUDGMENTS AFFIRMED.

COSTS TO BE PAID BY APPELLANT.